

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50216 | **DATE** | 4/15/2002 |
| **CASE TITLE** | | Edlund vs. St. Anthony Medical Center | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Defendant's motion for summary judgment and to file brief in excess of 15 pages;
> plaintiff's motion to strike

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated on the attached Memorandum Opinion and Order, defendant's motion to file brief in excess of fifteen pages and motion for summary judgment are granted; plaintiff's motion to strike is denied.  This case is dismissed in its entirety.

*Philip G. Reinhard*

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| ✗ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| ✗ | Mail AO 450 form. |
| ✗ | Copy to judge/magistrate judge. |

/LC

courtroom deputy's initials

number of notices

APR 16 2002
date docketed

docketing deputy initials

4-16-02
date mailed notice

FILED-WD
02 APR 16 AM 10: 32
CLERK
U.S. DISTRICT COURT

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

25

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

ANN EDLUND,                           )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     No. 00 C 50216
                                      )
ST. ANTHONY MEDICAL CENTER, a/k/a     )
OSF HEALTHCARE,                       )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiff, Ann Edlund, has filed a single-count amended complaint against defendant, OSF Healthcare, d/b/a St. Anthony Medical Center ("OSF"), under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). Jurisdiction and venue are proper under 42 U.S.C. §§ 12117(a), 2000e-5(f)(3). Before the court are OSF's motion for summary judgment, filed pursuant to Fed. R. Civ. P. 56, and Edlund's motion to strike.

### II.   BACKGROUND

#### A.   **Preliminary Matters**

At the outset, the court takes up a few evidentiary and procedural matters. In addition to her response to OSF's motion for summary judgment, Edlund has filed a motion to strike the affidavit of Karen C. Brown, OSF's Assistant Administrator of Strategic Human Resources. Edlund believes Brown has violated

Rule 56(e) by testifying to matters outside her personal knowledge and not attaching sworn or certified copies of documents referred to in her affidavit. Accordingly, she moves to strike numerous paragraphs in OSF's Local Rule ("LR") 56.1(a) statement of facts that are based on Brown's affidavit testimony. In the court's opinion, this motion is not well-founded.

As Edlund acknowledges, Brown is the keeper of personnel records for OSF and is competent to identify documents kept in the ordinary course of OSF's business. Because all of her testimony is based on her own review of OSF's records, Brown may testify as to events included in them, even if the events took place before she began working for OSF in 1996. Furthermore, for each document Brown refers to in her affidavit she states a "true and correct copy" is attached among the various exhibits submitted with OSF's motion for summary judgment and identifies where the document can be found. Although the documents are not actually attached to Brown's affidavit, this is merely a technicality. Edlund's motion to strike is therefore denied.

Without filing a formal motion, OSF in similar fashion moves to strike portions of Edlund's supplemental affidavit and corresponding paragraphs of her LR 56.1(b) statement of additional facts. The court agrees, at least in part, with OSF, but has stricken only those matters that are relevant to the court's analysis, as it explains below in more detail.

One last housekeeping matter: when OSF originally filed its

motion for summary judgment, it also filed a motion to file a brief in excess of fifteen pages (eighteen pages). The docket does not indicate this motion was ever ruled upon, so the court now grants that motion.

**B.**   **Facts**

In her second stint with OSF, between September 1988 and February 1993, Edlund worked as a cook in OSF's dietary department from September 1990 until her termination on February 9, 1993. (LR 56.1(a) ¶¶ 18, 21, 31) During this time, Edlund suffered from a number of ailments, including diabetes, bulimia, endometriosis, Dupuytren's contracture, retinopathy, carpal tunnel syndrome, stomach problems, thyroid problems, and depression. (<u>Id.</u> ¶ 58; LR 56.1(b) ¶¶ 86, 89) These conditions caused Edlund to miss a number of days from work and, in the last year of her employment with OSF, these absences, together with certain performance-related problems, precipitated Edlund's dismissal under OSF's "Progressive Disciplinary Action Policy." (LR 56.1(a) ¶¶ 29, 31-39, 41-42, 71)

This policy is based on a point-based system, where employees receive "points" for various types of disciplinary violations, such as habitual tardiness or absence, unsatisfactory work performance, and leaving the work place during working hours without permission. (<u>Id.</u> ¶¶ 26, 28) OSF's "Progressive Disciplinary Action Guide" sets out a recommended schedule of points to be assessed for each disciplinary action, depending on

the type of infraction and the level of warning (e.g., oral warning, written warning, disciplinary probation, etc.). (Id. ¶¶ 26, 28) According to the policy, accumulating twelve points in any twelve-month period "may result in dismissal." (Id. ¶ 27)

Within a nine-month span, between May 1992 and February 1993, Edlund accumulated thirteen points under the progressive disciplinary policy. (Id. ¶ 31) These were based on a total of six separate disciplinary actions, all of which Edlund seems to challenge. (LR 56.1(a) Pl. Resp. ¶¶ 32-39, 41-42) The court, however, finds only the last two disciplinary actions are relevant to Edlund's ADA claim. Although the parties have not raised the issue, the ADA did not become effective until July 26, 1992. See 42 U.S.C. § 12111 (Effective Date note). Because the ADA is not retroactive, Edlund must show she was the victim of disability discrimination on or after that date. See Huels v. Exxon Coal USA, Inc., 121 F.3d 1047, 1049 (7th Cir. 1997). This means the only disciplinary actions properly before the court are those that occurred after July 26, 1992. See Huizenga v. Elkay Mfg., No. 99 C 50287, 2001 WL 640973, at *2 n.1 (N.D. Ill. June 5, 2001) (Reinhard, J.). In this case, this principle limits Edlund's ADA claim to just the last two disciplinary actions - the penultimate one from December 24, 1992, and the final one on February 8, 1993.

On December 12 and 13, 1992, Edlund was absent because, according to her, she was hospitalized for a hypoglycemic

reaction related to her diabetes. (LR 56.1(a) ¶ 71(f); LR 56.1(b) ¶¶ 100, 103) Claiming that Edlund did not provide a medical excuse for this unscheduled absence, Edlund's supervisor, Christine Meyer, placed Edlund on disciplinary probation and gave her five points. (LR 56.1(a) ¶¶ 41, 71(f)) Then, on February 8, 1993, Meyer issued Edlund a written warning and assessed her two points for not following job procedures related to her cooking and food service duties on February 4, 6, and 7, 1993, such as serving burnt bacon and blackened eggs. (Id. ¶ 42) These last two points pushed Edlund up to a total of thirteen points in the last nine months, prompting her discharge on February 9, 1993. (Id. ¶¶ 29, 31)

### III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Chavez v. Illinois State Police, 251 F.3d 612, 635 (7th Cir. 2001). To determine whether a genuine issue of material fact exists, the court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. See Chavez, 251 F.3d at 635. Only when a reasonable jury could find for the nonmoving party based on the record as a whole will there be a "genuine issue for trial." See id.

-5-

## A.    Statute of Limitations

OSF initially argued in its opening brief Edlund's entire complaint should be dismissed because she did not file suit until June 20, 2000, almost two and a half years after the EEOC supposedly first sent out Edlund's right to sue letter on December 22, 1997, and well beyond the ninety-day statute of limitations.  See 42 U.S.C. §§ 12117(a), 2000e-5(f)(1).  OSF seems to have lost interest in this argument in its reply brief, though, and for good reason.  In Jones v. Madison Service Corp., 744 F.2d 1309 (7th Cir. 1984), the court explained the "crucial concept" in determining when the ninety-day statute of limitations begins is "actual knowledge that the time period in which a suit can be filed has commenced."  Id. at 1313.  This "actual notice" rule has been interpreted to mean that a plaintiff who fails to receive actual notice of her right to sue through her own fault, such as failing to notify the EEOC of her new address, cannot toll the ninety-day time limit.  See Houston v. Sidley & Austin, 185 F.3d 837, 839 (7th Cir. 1999); St. Louis v. Alverno Coll., 744 F.2d 1314, 1316-17 (7th Cir. 1984).

In this case, Edlund may take advantage of the "actual notice" rule because both she and her lawyers took reasonable steps to ensure the receipt of her right to sue letter.  First, Edlund notified the EEOC twice of a change of address, the second time in November 1997, just a month before the EEOC supposedly sent the right to sue letter.  (Def. Exh. B, Bates nos. 032, 033)

In addition, Edlund's attorney sent a letter to the EEOC dated December 4, 1997, which not only requested the EEOC issue a right to sue letter but also notified the EEOC he represented Edlund and asked that the letter be sent to him. (Id. Bates no. 018) The EEOC nevertheless still addressed the right to sue letter to Edlund, not her attorney, and at her old address no less. (Am. Compl. Exh. B) Edlund also has testified by affidavit she never received the right to sue notice and her attorney has similarly testified he did not receive a copy of the notice until March 28, 2000, within ninety days from when suit was filed on June 20, 2000. (Pl. Exh., Havrilesko Aff. ¶ 12; Pl. Exh., Edlund January 2002 Aff. ¶ 2) Finally, Edlund's attorney has specifically stated that up until his receipt of the right to sue letter on March 28, 2000, he was never told, and was not aware, the right to sue letter had previously been issued on December 22, 1997, despite numerous subsequent follow-ups with the EEOC over the previous two years. (Pl. Exh., Havrilesko Aff. ¶¶ 4-9, 20) Cf. Ball v. Abbott Adver., Inc., 864 F.2d 419, 420-21 (6th Cir. 1988); Colquett v. Rockford Register Star, No. 00 C 50215, 2001 WL 699933, at *1 (N.D. Ill. June 21, 2000) (Reinhard, J.). Given that both Edlund and her attorney notified the EEOC numerous times of the correct address for mailing her right to sue notice and their unrebutted testimony that neither ever had "actual knowledge" the notice had been issued until March 28, 2000, the court finds Edlund's suit was timely filed.

## B.    Retaliation

More promising is OSF's argument that Edlund may not proceed
on her retaliation claim under the ADA because she did not
exhaust her administrative remedies with respect to this claim.
Part of Edlund's complaint seems to be that OSF fired her in
retaliation for requesting accommodations, threatening to
complain to the EEOC about what she perceived as disability
discrimination, and in fact writing to the EEOC just a week
before her termination.   (LR 56.1(b)  ¶¶ 81-82; Pl. Exh., Bates
nos. 004-005)  Edlund admits she did not include her retaliation
claim in her original formal EEOC charge, which she first filed
on May 24, 1993.   (LR 56.1(a) ¶ 4)  She also recognizes
retaliation and discrimination are viewed as separate wrongs and
a charge alleging only discrimination does not place the employer
on notice that it is also being charged with retaliation.   See
Heuer v. Weil-McLain, 203 F.3d 1021, 1022-23 (7th Cir. 2000).
Edlund nevertheless insists her case falls within a judicially-
created "exception" to the administrative exhaustion requirement,
which says that a plaintiff need not file a separate, second
administrative charge of discrimination to assert a claim of
retaliation growing out of an earlier filed charge.   See id. at
1023; McKenzie v. Illinois Dep't of Transp., 92 F.3d 473, 482-83
(7th Cir. 1996).

The problem with applying the exception here is that Edlund
never filed a previous charge of discrimination before she was

allegedly retaliated against, but had only sent her handwritten letter to the EEOC. True, the letter accused OSF of disability discrimination and harassment and asked for additional assistance, but to the extent Edlund tries to equate this letter with a formal EEOC charge, the argument simply does not wash.

Perhaps the most important difference between the two, at least in the context of this case, is that the EEOC must send an employer notice of a formal charge within ten days from when it is filed, see 29 C.F.R. § 1601.14, whereas there is no corresponding notification requirement when an individual makes nothing more than an informal inquiry to the EEOC. Indeed, it appears the EEOC's only response to Edlund's letter was to follow up with her by asking for more information, which she provided in a second letter dated February 10, 1993, the day after she was fired. (LR 56.1(b) ¶ 82; Pl. Exh., Bates nos. 001-003) What's more, Edlund offers no evidence to even suggest any of the decision makers responsible for her discharge were in fact aware at the time of her dismissal that she had sent any sort of letter to the EEOC accusing OSF of discriminating against her. As the idea behind the exception to the exhaustion requirement is that a "double filing" is unnecessary when the employer is alleged to have retaliated against the employee for filing a previous charge of discrimination, see McKenzie, 92 F.3d at 482-83, this rationale obviously has no force where, as here, the employer does not even know the employee has filed something with the

EEOC. In other words, OSF could not have retaliated against Edlund for sending the letter to the EEOC because it was unaware she had done so, making the exception to the exhaustion requirement a non-issue. Whatever motivations Edlund believes OSF may have had to retaliate against her, filing a charge (or letter) of discrimination with the EEOC could not have been one of them. If she wanted to allege OSF retaliated against her for some other reason(s), she could and should have done so in her original formal EEOC charge from May 24, 1993. See id. at 483.

## C. **Failure to Reasonably Accommodate**

Edlund's primary argument on summary judgment is that OSF did not reasonably accommodate her various disabilities[1] when it refused to excuse her disability-related absences but instead used those absences as grounds for assessing points against her under the progressive disciplinary policy. Because of the ADA's July 26, 1992 effective date, as noted above, and because the February 8, 1993 disciplinary action had nothing to do with a disability-related absence, Edlund's reasonable accommodation claim is necessarily limited to the five points assessed against her in December 1992.[2]

---

[1] OSF concedes for purposes of summary judgment that Edlund has a "disability" within the meaning of the ADA.

[2] Edlund also mentions in her brief three other reasonable accommodations she says OSF denied her but she does little with them and the court can make short work of them here. As for not being allowed to store her insulin in the kitchen refrigerator, Edlund herself admitted her doctor said it was perfectly acceptable to store it at room temperature. (LR 56.1(a) ¶ 65)

As part of her reasonable accommodation claim, it is Edlund's burden to show she is a "qualified individual with a disability" under the ADA. See 42 U.S.C. § 12112(a); EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943, 948 (7th Cir. 2001). This means Edlund must demonstrate she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds . . . ." 42 U.S.C. § 12111(8); Yellow Freight, 253 F.3d at 948. Of particular relevance here is the oft-repeated admonition that "regular attendance is usually an essential function in most every employment setting . . . where the work must be done on the employer's premises." Jovanovic v. In-Sink-Erator, 201 F.3d 894, 899-900 (7th Cir. 2000); see also Yellow Freight, 253 F.3d at 948-49; Amadio v. Ford Motor Co., 238 F.3d

---

Next, Edlund testified that on eight different occasions between 1988 and 1993, Meyer refused to allow her to immediately check her blood sugar level, but instead made her wait anywhere from five minutes to an hour to do so. (Id. ¶ 67) Edlund, however, did not specify the exact dates this occurred, so the court cannot tell if any of the instances were after July 26, 1992. Even so, although Edlund claims in her statement of additional facts that the delays caused her to experience hypoglycemic reactions, this cannot even be reasonably inferred from the portion of her deposition that she cites in support of this assertion. (LR 56.1(b) ¶ 112; Edlund dep., pp. 126-128) In fact, Edlund has not pointed out any evidence showing the delays in checking her blood sugar level on those eight occasions affected her physically or in any way interfered with her ability to do her job. Finally, Edlund disputes the legitimacy of two disciplinary points Meyer assessed against her for eating in the work area when she told Meyer it was because she needed to counteract an oncoming diabetic attack. (LR 56.1(a) ¶¶ 38, 39; LR 56.1(b) ¶¶ 104, 108) This disciplinary action, however, is once again irrelevant because it took place on July 14, 1992 – before the ADA's effective date. (LR 56.1(a) ¶ 38)

919, 927-28 (7th Cir. 2001).

In this case, the court agrees that Edlund's frequent absences from work rendered her unable to perform the essential function of regular attendance at the job site and, therefore, finds she was not "qualified" under the ADA to do her job as a dietary cook at OSF. In just 1992 alone, Edlund took a seven-week medical leave of absence in August and September, nine and a half hours of unpaid sick time, and 170.4 hours of paid sick time, for a total of approximately fifty-seven and a half days, or two and a half months, she was absent from work (based on an eight-hour work day and a five-day work week). (LR 56.1(a) ¶ 72) Edlund herself unequivocally admitted she was unable to regularly attend work at OSF during 1992 and 1993 because of her various physical and mental impairments, and also testified that her ability to attend work actually worsened from January 1992 through February 1993. (Id. ¶¶ 73-74) Finally, Edlund concedes hers was not a job that could be done at home and, conversely, that regular attendance at the job site was an essential function of the job. (Id. ¶ 75; Pl. Resp., p. 9) Taken together, these facts alone suffice to show Edlund was not a "qualified individual" due to her frequent absenteeism. See, e.g., Jovanovic, 201 F.3d at 899-900 (employee who missed twenty-four days in twelve-month period was not qualified because of irregular attendance). Nor does it matter that Edlund's disabilities caused most of these absences because "the ADA does

-12-

not protect persons who have erratic, unexplained absences, *even when those absences are a result of a disability.*" Waggoner v. Olin Corp., 169 F.3d 481, 484 (7th Cir. 1999) (emphasis added).

Without responding directly to this argument, Edlund counters that she still should not have received five disciplinary points for her absence in December 1992 because, according to her, OSF's human resources supervisor, Mark Thate, previously had told her that any of her absences due to her diabetic hypoglycemic reactions would not be counted against her for purposes of the disciplinary policy. (LR 56.1(b) ¶¶ 94, 96) Edlund further says Thate told her that all such absences would be excused (apparently without limit) even if she did not provide a doctor's certificate, so long as she told her supervisor the absence was related to her diabetes and authorized OSF to obtain her medical records, all of which she says she did. (Id. ¶ 98; Pl. Exh., Edlund January 2002 Aff. ¶¶ 8-9) Because her absence in December 1992 was due to her diabetes, Edlund believes Meyer violated the agreed-upon accommodation by assessing points against her for that absence. As the court views the record, this theory suffers from a number of infirmities.

First, all of Edlund's testimony relaying what Thate told her comes entirely from a supplemental affidavit she filed in response to OSF's motion for summary judgment – testimony the court finds suspect for various reasons. One is that Edlund's recollection in her affidavit of what Thate said is far more

specific than what she remembered in her deposition, where she cryptically testified that Thate said her disability-related absences would not be counted against her "[a]s long as [she] took care of the problem" and "did what [she] had to do." (LR 56.1(b) Def. Resp. ¶ 94; Def. Exh. C, Edlund dep., pp. 134-35) Nowhere in her deposition does she mention the possibility of authorizing OSF to check her medical records and being allowed to just tell her supervisor an absence was caused by her disability.

Another reason the court discredits this portion of Edlund's affidavit testimony is that it has no support in the record. For example, she has not introduced any documentary evidence that she did in fact sign an authorization form permitting OSF to obtain her medical records; similarly, there is no evidence to corroborate that Thate told her all she had to do to excuse her diabetes-related absences was give OSF such an authorization and tell her supervisor her absence was due to her diabetes. Because "[b]ald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact" on summary judgment, Stein v. Ashcroft, – F.3d –, No. 00-4326, 2002 WL 435357, at *4 (7th Cir. Mar. 21, 2002); see also Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001) ("self-serving affidavits without factual support in the record will not defeat a motion for summary judgment") (internal quotations and alterations omitted), the court will not consider the first

sentence of paragraph 6, the second sentence of paragraph 7, all of paragraph 8, and all but the last sentence of paragraph 9 of Edlund's affidavit dated January 18, 2002. It accordingly strikes paragraphs 94-99 from Edlund's LR 56.1(b) statement of additional facts. Without these, Edlund's argument that she was fired for exercising an accommodation Thate had supposedly promised her has no factual basis.[3]

A separate ground for rejecting Edlund's reasonable accommodation claim is that she repeatedly acknowledges in her response brief that OSF would not assess points against her for an absence "*if it was medically verified as being attributed to her disability.*" (Pl. Resp., pp. 8, 9) (emphasis added) She admits OSF gave her an excused absence every time she medically verified the absence was related to her disabilities, totaling

---

[3] Apart from the self-serving nature of Edlund's affidavit, the court has serious doubts whether any employer would ever agree to the type of open-ended arrangement Edlund described. In essence, Edlund basically claims OSF agreed to excuse any absence of hers so long as she told her supervisor it was related to her diabetes and she had authorized OSF to obtain her medical records. But what rational employer would take it upon itself to check an employee's medical records every time she claimed her absence was due to a chronic and recurring condition like diabetes, especially an employee like Edlund who had such a poor attendance history and who was frequently absent because of her diabetes? Edlund insists the court should not sit as a "super-personnel department," Nawrot v. CPC Int'l, 277 F.3d 896, 906 (7th Cir. 2002), by questioning OSF's "somewhat humane or lenient policies," but her theory borders on the fanciful. See Patterson v. Chicago Ass'n for Retarded Citizens, 150 F.3d 719, 724 (7th Cir. 1998) (stating that if a later-filed affidavit is "sufficiently unlikely - to the point of unreliable - then it cannot be used to create a 'genuine issue of material fact'") (internal quotation marks and citation omitted).

-15-

somewhere in the neighborhood of twenty-five to thirty excused absences during her second round of employment with OSF. (LR 56.1(a) ¶¶ 43, 70) Conversely, the only absences counted against her were those for which she did not present medical documentation. (Id. ¶ 44) Thus, contrary to her self-serving affidavit, there is little doubt OSF was perfectly willing to excuse her disability-related absences based not on her word and its own review of her medical records, but on a simple doctor's note. Yet Edlund offers no evidence to dispute the fact that she never provided any such medical verification for her December 1992 absence.[4] (Id. ¶ 41) As the record makes clear then, Edlund received five points for that absence because she did not have the proper medical documentation, not because OSF failed to reasonably accommodate her.

## D.  **Disparate Treatment**

Spending the bulk of her brief arguing the reasonable accommodation claim, Edlund does nothing to advance the disparate treatment claim she alluded to in her complaint. (Am. Compl. ¶ 13) As reasonable accommodation and disparate treatment are two

---

[4]  Edlund does mention in her response brief that the December 1992 absence was the result of a "hypoglycemic incident[] while at work." (Pl. Resp., p. 9) If this were true, it might at least be reasonable to infer OSF was aware this absence was related to her diabetes and, therefore, further medical confirmation was not required. But the portions of the record Edlund cites in support of this assertion say nothing about the December 1992 incident happening at work. (LR 56.1(b) ¶ 103; Def. Exh. C, Edlund dep., pp. 82-83) The court thus has stricken any reference to that fact in paragraph 103 of Edlund's statement of additional facts.

distinct categories of discrimination under the ADA, see Basith v. Cook County, 241 F.3d 919, 927 (7th Cir. 2001), the court deems Edlund to have abandoned the latter claim.

## IV. CONCLUSION

For the reasons stated above, OSF's motion for leave to file a brief in excess of fifteen pages is granted, as is its motion for summary judgment. Edlund's motion to strike is denied. This case is hereby dismissed in its entirety.

E N T E R:

_Philip G. Reinhard_

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

**DATED:** _April 15, 2002_

# United States District Court
## Northern District of Illinois
### Western Division

Ann Edlund

v.

St. Anthony Medical Center

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 50216

☐    Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■    Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion to file brief in excess of fifteen pages and motion for summary judgment are granted; plaintiff's motion to strike is denied. This case is dismissed in its entirety.

FILED-WD
02 APR 16 AM 10: 32
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 4/16/2002

Susan M. Wessman, Deputy Clerk